IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02293-PAB-KLM

KEVIN JACKSON,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER and
DENVER POLICE DEPARTMENT,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the Motion for Summary Judgment [Docket No. 18] filed by defendants the City and County of Denver and the Denver Police Department ("DPD"). The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

      This case arises out of plaintiff Kevin Jackson's demotion from the rank of sergeant to the rank of police officer first grade. Plaintiff began his employment with DPD on October 1, 1991. In September 2001, DPD promoted him to the rank of sergeant, Docket No. 18-1 at 4 (Jackson Dep. 26:11-15), and in 2004, assigned him to the Denver Police Academy (the "Academy"). *Id.* (Jackson Dep. 26:21-23).

      The Academy is a six month training program for DPD recruits, which includes classroom work, training courses on self-defense, arrest control tactics, and the use of

---

[1]The following facts, unless otherwise indicated, are not in dispute.

firearms.  Docket No. 18-8 at 3.  On October 14, 2008, a new class of Academy recruits ("Class 08-2") began training to become non-probationary officers of the DPD. Sergeant Jackson[2] was the Class Supervisor for Class 08-2, meaning that he taught classes and was responsible for the overall supervision of the class.  Docket No. 18-8 at 3, ¶ 3.  Jim Mair was the other sergeant in charge of Class 08-2.  *Id.*

Chrystal Threlkeld was a probationary recruit in Class 08-2.  On March 13, 2009, Officer Threlkeld filed a complaint with the Internal Affairs Bureau ("IAB") alleging that she was subject to discrimination, harassment, and retaliation.  Docket No. 18-4 at 1.  In her complaint, Officer Threlkeld alleged that she found anonymous typewritten notes in her locker, which implied that Sergeant Jackson[3] liked her and had a crush on her. Docket No. 18-4 at 1.  Officer Threlkeld also alleged that she received several phone calls and text messages from Sergeant Jackson when she was a recruit at the Academy.  *Id.* at 1-2.

After receiving Officer Threlkeld's complaint, the IAB conducted an investigation and charged Sergeant Jackson with violations of DPD Rule and Regulation RR-138

---

[2]As will be discussed in greater detail below, on October 17, 2009, DPD demoted plaintiff from the rank of sergeant to the rank of police officer first grade.  *See* Docket No. 18-6.  Because plaintiff held the rank of sergeant during the events relevant to this case, this Order will refer to plaintiff as "Sergeant Jackson" in the discussion of the facts.

[3]In his response, plaintiff admits to all of defendants' undisputed facts.  *See* Docket No. 21 at 4.  Nevertheless, the Court can only grant defendants' summary judgment if, based on the undisputed facts, defendants are entitled to judgment as a matter of law.  *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002); *cf.* Fed. R. Civ. P. 56(e)(3) (providing that if the opposing party does not respond, summary judgment should be entered if "the movant is entitled to it").

("RR-138")[4] and DPD Rule and Regulation RR-105 ("RR-105").[5]   Docket No. 18-4 at 13.

The standard used by the DPD to determine whether conduct constitutes sexual

harassment as defined in RR-138 is set forth in Section 117.03 of the Operations

Manual which states, in relevant part, that:

> (1) Policy and Declaration - It is the policy of the Department of Safety that
> its employees (both CSA and sworn), contract employees, temporary
> workers, and applicants for employment have a right to be free of
> discrimination, harassment, and retaliation based upon actual or perceived
> race, color, creed, national origin, ancestry, sexual orientation, physical or
> mental disability, age, gender/sex (including pregnancy, childbirth, or

---

[4]RR-138 entitled "**Discrimination, Harassment, and Retaliation**" states:

Members of the Department are expressly prohibited from engaging in any
form of discrimination, harassment, or retaliation, based on any class or
personal characteristic protected by federal, state or local law, or
otherwise violating the Discrimination, Harassment and Retaliation Policy
found in section 117.03, the Disclosure of Information Protected Policy
found in section 117.05, the Racial/Ethnic Intimidation Policy found in
section 117.06 of the Denver Police Operations Manual or the Equal
Employment Opportunity for Individuals with Disabilities Policy
found in section 503.13 of the Denver Police Operations Manual.

Docket No. 18-2 at 12.

[5]RR-105 entitled "**Conduct Prejudicial**" states:

Officers shall not engage in conduct prejudicial to the good order and
police discipline of the Department or conduct unbecoming an officer
which:

(a) *May or may not specifically be set forth in Department rules* and
regulations or the Operations Manual; or

(b) Causes harm greater than would reasonably be expected to result,
regardless of whether the misconduct is specifically set forth in
Department rules and regulations or the Operations Manual.

Docket No. 18-2 at 8 (emphasis added).

3

caregiver status), marital status, military status, religion, political affiliation, or any other basis protected by federal, state, or local law or regulation.

(2) Conduct Prohibited - Examples of conduct that could violate this policy include, but are not limited to:

      a.    Verbal conduct such as epithets, derogatory comments, slurs, *unwanted sexual advances, invitations, or comments*;
. . .

(3) Individuals who believe they are being subjected to prohibited discrimination or harassment are strongly urged to make it clear to the offending employee that such behavior is offensive and should be discontinued *unless the individual experiencing the alleged misconduct is uncomfortable communicating that to the offending employee*.
. . .

(6) The Department of Safety maintains "zero tolerance" regarding violations of this policy, meaning the Department will not knowingly tolerate acts of discrimination, harassment, or retaliation.

. . .

      b.    Appropriate actions may include, but are not limited to, discipline (up to and including termination), training, mediation, or other effective remedial action commensurate with the severity of the offense and any such actions will occur as soon as practicable *for even a single violation of the policy*.

Docket No. 18-3 at 1-2 (emphasis added).

On October 16, 2009, Manager of Safety Alvin J. LaCabe issued an order of

disciplinary action after reviewing the IAB investigation.[6]  Docket No. 18-5.  Manager

LaCabe found that Sergeant Jackson violated RR-138, RR-105(a), and RR-105(b).  *Id.*

---

[6]Manager LaCabe is the administrative head of the Department of Safety, which includes the DPD, the Fire Department, and the Sheriff's Department.  Docket No. 22-3 at 2 (LaCabe Dep. 31:13-17).  Manager LaCabe is responsible for disciplinary, hiring, and policy decisions regarding all divisions of the Department of Safety.  *Id.* (LaCabe Dep. 31:18-21).

As a result, he demoted Sergeant Jackson from the rank of sergeant to the rank of police officer first grade and imposed a suspension of 42 days for violations of RR-138 and 42 days for violations of RR-105(b).  *Id.*  Sergeant Jackson's suspensions for violations of RR-138 and RR-105(b) were to run consecutively, meaning suspension for 84 days.  Docket No. 22-3 at 6 (LaCabe Dep. 64:4-13).  As an alternative basis for discipline, Manager LaCabe found that Sergeant Jackson also violated RR-105(a), for which he reduced Sergeant Jackson's rank from sergeant to police officer first grade and suspended Sergeant Jackson for 84 days.  Docket No. 18-5.  Manager LaCabe set October 17, 2009 as the effective date for Sergeant Jackson's demotion and ordered that reduction of Sergeant Jackson's rank should apply in lieu of the 84-day suspension. *Id.*; Docket No. 18-6 at 8.

On October 26, 2009, Sergeant Jackson appealed Manager LaCabe's disciplinary order.  Docket No. 18-7.  The appeal was set for an evidentiary hearing in front of Hearing Officer Timothy R. Arnold.  Docket No. 18-8.  On November 20, 2009, before the evidentiary hearing on Sergeant Jackson's appeal, Manager LaCabe issued a supplemental order of disciplinary action [Docket No. 18-6], wherein he discussed the rationale behind Sergeant Jackson's discipline.  Manager LaCabe explained that Sergeant Jackson's conduct constituted "a serious abuse or misuse of authority, or unethical behavior, or an act" which raised significant questions about the professionalism of the DPD.  Docket No. 18-6 at 2.  To determine the discipline, Manager LaCabe considered (1) the character of the misconduct, (2) the character of the offender, and (3) the effect or harm the offender's conduct had on the department as a whole.  Docket No. 22-3 at 6 (LaCabe Dep. 62:9-23).  Manager LaCabe concluded

that Sergeant Jackson's actions qualified as serious misconduct because he
intentionally breached his position of trust, violated DPD's anti-fraternization policy
knowing that his actions were inappropriate,[7] and abused his authority as the Class
Supervisor in order to establish a personal relationship with a probationary recruit.
Docket No. 18-6 at 4.  Manager LaCabe, however, determined that some factors
mitigating Sergeant Jackson's actions included his moderate history of disciplinary
conduct, his acceptable work performance, and his prior commendations.  *Id.* at 2.  With
regard to the amount of harm caused to the DPD, Manager LaCabe concluded that
Sergeant Jackson's actions exposed the DPD to potential lawsuits for sexual
harassment, risked the appearance that certain employees enjoyed "favored status"
because of romantic interest from supervisors, and raised the possibility that recruits
would refrain from reporting inappropriate conduct for fear that the DPD's reporting
procedures are ineffective.  *Id.* at 3-4.

Manager LaCabe found that the imbalance of power between Sergeant Jackson,
a supervisor, and Officer Threlkeld, a probationary recruit, presented "special
circumstances" justifying Sergeant Jackson's demotion from sergeant to police officer
first grade because: (1) his breach of trust showed that he was unfit to fulfill the
responsibilities of a sergeant; (2) allowing Sergeant Jackson to remain in a position of
leadership would negatively affect the Academy and raise questions about the
effectiveness of the DPD's disciplinary system as applied to supervisors; and (3) had

---

[7]The anti-fraternization policy prohibits recruits from engaging in unprofessional
discussion with DPD staff members or meeting them outside of work.  Docket No. 18-4
at 11.  Sergeant Jackson acknowledged that fraternization means the process of
transforming a professional relationship into a personal relationship.  *Id.*

the misconduct occurred before he became a sergeant, it would have raised substantial questions as to his ability to hold the rank of sergeant. *Id.* at 5-6.

On February 4 and 5, 2010, Hearing Officer Arnold held an evidentiary hearing on Sergeant Jackson's appeal. Manager LaCabe had the burden to prove that his disciplinary order was supported by a preponderance of the evidence. Hearing Officer Arnold performed a *de novo* review of Manager LaCabe's disciplinary order. Docket No. 18-8 at 10.

On March 24, 2010, Hearing Officer Arnold issued his findings of fact and conclusions of law. *Id.* at 21. He found that Officer Threlkeld's allegations were supported by corroborating evidence and concluded that Sergeant Jackson's sexual advances were unwelcome.[8] *Id.* at 15. Hearing Officer Arnold noted that Sergeant Jackson's inappropriate conduct consisted of unsolicited text messages, unsolicited phone calls, paying additional attention to Officer Threlkeld to the detriment of other recruits,[9] and taking Officer Threlkeld out of class for no apparent purpose other than to say goodbye. *Id.* at 10-11. Hearing Officer Arnold noted that, although some of

---

[8]The Hearing Officer found it irrelevant that Officer Threlkeld did not object to Sergeant Jackson's conduct because it was clear she feared retaliation and therefore was not required to do so under Section 117.03 of the Operations Manual. Docket No. 18-8 at 13; *see also* Docket No. 18-3 at 1, § 117.03(3) (noting that individuals who are subject to harassment are "strongly urged to make it clear to the offending employee that such behavior is offensive and should be discontinued *unless the individual experiencing the alleged misconduct is uncomfortable communicating that to the offending employee*") (emphasis added).

[9]The Hearing Officer credited the testimony of Officer Stephanie Southard, a fellow recruit, and Technician Theodore Maher, the firing range instructor, who testified that  Sergeant Jackson attended most of Officer Threlkeld's skills sessions at the firing range and, while there, spent the majority of his time with Officer Threlkeld and did not spend time with other recruits at the firing range. Docket No. 18-8 at 5, ¶ 13.

7

Sergeant Jackson's conduct may qualify as benign, when this conduct is viewed through the lens of the March 12, 2009 text message, which said "I have to admit that I really like you a lot.  At the risk of you thinking I am weird, I really want to kiss you. Don't think I am crazy.  I just say what I feel," it was clear that Sergeant Jackson sought an improper personal relationship with a recruit.  Docket No. 18-8 at 11.

Hearing Officer Arnold concluded that Sergeant Jackson's behavior departed from the professional standards expected of a sergeant and negatively affected Officer Threlkeld because she could not concentrate on her studies, often cried herself to sleep, and walked a tightrope between maintaining a professional relationship with Sergeant Jackson and avoiding retaliation if she rejected or reported his advances.  *Id.* at 16.  Hearing Officer Arnold reasoned, however, that Sergeant Jackson did not violate RR-138 because his conduct did not constitute sexual harassment.  *Id.* at 15.  Instead, he found that the violations of RR-105(a) and RR-105(b) were supported by a preponderance of the evidence because Sergeant Jackson admitted that he violated the Academy's anti-fraternization policy,[10] admitted that he abused his position of trust, his conduct created an appearance of favorable treatment in the DPD, and his conduct undermined his standing among the recruits.  *Id.* at 16.  Based on these violations, Hearing Officer Arnold affirmed Sergeant Jackson's demotion.  *Id.* at 19.

Both Sergeant Jackson and Manager LaCabe appealed Hearing Officer Arnold's decision to the Civil Service Commission ("CSC").  Docket No. 18-9.  On January 21,

---

[10]The Hearing Officer found that Sergeant Jackson's violation of the anti-fraternization policy heightened the offense because Sergeant Jackson "blatantly thwarted" the policy after stressing its importance to recruits.  Docket No. 18-8 at 16.

2011, the CSC partially reversed Hearing Officer Arnold's decision and affirmed

Manager LaCabe's disciplinary order in its entirety.  *Id.* at 7.

On April 29, 2011, Sergeant Jackson filed a charge of discrimination with the

Colorado Civil Rights Division.  Docket No. 18-10.  The Equal Employment Opportunity

Commission ("EEOC") issued a right-to-sue letter on May 31, 2011, which Sergeant

Jackson received on June 3, 2011.  Docket No. 1 at 2, ¶ 9; Docket No. 18-11.  On

August 31, 2011, Sergeant Jackson filed the present case.  In his complaint, Sergeant

Jackson alleges that he was subject to discrimination and retaliation because of his race

in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as

well as illegal employment practices because of his gender in violation of the Colorado

Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq.  See* Docket No.

1.  On September 24, 2012, the Court dismissed plaintiff's CADA claim for failure to

exhaust administrative remedies.  Docket No. 17.  On October 31, 2012, defendants

filed the present motion requesting that the Court enter summary judgment on all of

plaintiff's remaining claims for relief.  Docket No. 18.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if

under the relevant substantive law it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

9

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III.  ANALYSIS

### A.   Discriminatory Demotion

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Plaintiff argues that he was subject to discrimination because of his race.  Docket No. 21 at 4-5.  Plaintiff, however, does not assert any claims against Manager LaCabe per se.  Instead, he brings his claims against the City and County of Denver and the DPD.

To succeed on his claim of discrimination, plaintiff must establish municipal liability against defendants pursuant to *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  To establish municipal liability against defendants, plaintiff must first prove that defendants discriminated against him because of his race.  Second, plaintiff must prove that an official policy or custom promulgated by defendants was the "direct cause" or the "moving force" behind the violation of his rights.[11]  *See Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (noting that race discrimination

---

[11]To show a policy or custom, plaintiff must establish the existence of (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice, (3) decisions of employees with final policymaking authority, (4) the ratification by a final decisionmaker of subordinates' actions, or (5) the failure to adequately train or supervise employees.  *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

Case 1:11-cv-02293-PAB-KLM   Document 32   Filed 05/13/13   USDC Colorado   Page 11 of 23

claims under Title VII are analyzed according to the same burden-shifting framework used for both § 1981 and § 1983 claims); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

Where there is no direct evidence of discrimination, as is the case here, plaintiff must rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973), to show defendants' discriminatory animus. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove discrimination "by relying on the three-part McDonnell Douglas framework") (internal quotation marks omitted). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, whereupon the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Id*. Plaintiff then must show that the employer's stated reason is pretextual. *Id.* In order to make a prima facie case of disparate treatment, plaintiff must show three elements: (1) that he belonged to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

Plaintiff has established the first and second prongs of his prima facie case. As an African-American employee, plaintiff is a member of a protected class. In addition, his demotion constitutes an adverse employment action. However, plaintiff has not

11

established that Manager LaCabe issued a demotion decision under circumstances that give rise to an inference of discrimination.[12]

Under the third prong of a prima facie case, the critical inquiry "is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005).  To establish the third prong of his prima facie case, plaintiff can present evidence of "preferential treatment given to employees outside the protected class," "actions or remarks made by [a] decisionmaker," or circumstances related to "the timing or sequence of events leading to" his demotion.  *Id.* at 1101 (citation and quotation omitted).  The real question is "whether a plaintiff has shown actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion."  *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (internal quotation and citation omitted).

Plaintiff relies primarily on evidence he argues shows that defendants treated similarly situated employees more favorably.  Docket No. 21 at 6.  Specifically, plaintiff

---

[12]There is tension in Tenth Circuit case law "regarding what a plaintiff must establish as part of his or her prima facie case of discrimination.  Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext . . . [r]egardless of whether [courts] analyze the plaintiff's evidence in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result." *E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) (internal citations and quotations omitted).

argues that the lesser discipline imposed against Officer Carlette Havard and Captain Steven Carter shows that his demotion was inconsistent with the punishment imposed on other officers outside of his protected class.  *Id.* at 5.

Individuals are considered "similarly situated" when they deal with the same supervisor and are subjected to the same standards governing performance, evaluation, and discipline.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).  To show disparate treatment, a plaintiff must show that he was similarly situated to his comparators in "all relevant respects," and courts traditionally "compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citation omitted).  Moreover, even employees who are similarly situated must have been disciplined for conduct of "comparable seriousness" in order for their disparate treatment to be relevant.  *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

It is undisputed that Manager LaCabe issued the disciplinary orders for plaintiff, Officer Havard, and Captain Carter.  However, plaintiff does not establish that he is similarly situated or that his conduct was of comparable seriousness to that of Officer Havard and Captain Carter.

Officer Havard received a 10-day suspension for rubbing a fellow officer's buttocks on two occasions in violation of DPD Rule and Regulation RR-139.[13]  Docket

---

[13]RR-139 is the DPD's earlier version of the rule and regulation pertaining to charges of discrimination, harassment, or retaliation.  This rule was amended for actions that occurred after October 1, 2008, and is now codified at RR-138.  Manager LaCabe testified that, although the language of the regulation did not change, the substance of

No. 22-4 at 9-11.  For several reasons, Officer Havard is not a proper comparator.  First,

Officer Havard is also African-American and thus the fact that she received more

favorable treatment does not support an inference that defendants demoted plaintiff

because of discriminatory animus.  *Aramburu*, 112 F.3d at 1406 n.4 (noting that an

employer's similar or favorable treatment of protected employees does not support an

inference of discriminatory animus).  Second, Officer Havard is not similarly situated to

plaintiff because Officer Havard was not a supervisor in the police department.  *See*

*E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800-801 (10th Cir. 2007) (noting that plaintiff's

comparators must be subject to the same standards governing performance evaluation

and discipline).  Third, Officer Havard's conduct is not of comparable seriousness with

that of plaintiff.  Officer Havard was not charged with a violation of trust; instead, her

conduct was directed towards a fellow police officer and not a probationary recruit.

*McGowan*, 472 F.3d at 745.  Finally, Officer Havard and plaintiff were not punished

under the same standards governing discipline because Officer Havard was punished

under the DPD guidelines in effect prior to October 1, 2008.  *See EEOC v. Flasher Co.*,

986 F.2d 1312, 1320 (10th Cir. 1992) (noting that differences in how different

employees are treated "may be explained by the fact that the discipline was

administered by different supervisors, or that the events occurred at different times

when the company's attitudes toward certain infractions were different, or that the

individualized circumstances surrounding the infractions offered some mitigation for the

---

RR-139 changed because Section 117.03 was amended to redefine what constitutes
incidents of sexual harassment.  Docket No. 22-3 at 11 (LaCabe Dep. 148:1-149:12).

infractions less severely punished").  Accordingly, plaintiff fails to demonstrate that he is similarly situated to Officer Havard.

DPD charged Captain Carter with making inappropriate comments as a supervisor in the Academy.  Some of Captain Carter's comments include "[I am] moist and [my] nipples [a]re hard"; "this job is the best thing you can do with your clothes off"; and referring to himself as "Chief Whitman's butt boy."  Docket No. 21-4 at 2-3; *see also* Docket No. 21-5 at 2-3 (LaCabe Dep. 136:9-139:12).  DPD found that Captain Carter's comments violated RR-105 and fined him with a loss of twenty-four paid hours.  Docket No. 21-6.  Even viewing this evidence in a light most favorable to plaintiff, the Court finds that it does not demonstrate that Captain Carter engaged in conduct of comparable seriousness.

First, Captain Carter was not charged with using his supervisory position to attempt to foster a personal relationship with a probationary recruit.  *PNVF*, 487 F.3d at 801-02 (noting that occasionally drinking beer at work is not comparable to chronic tardiness and answering a cell phone at work because it was not a productivity-related violation).  Second, although Captain Carter's comments were inappropriate, they were not directed at particular individuals.  *See Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924 (10th Cir. 2004) (noting that plaintiff failed to show disparate treatment because comparator's fellow employees engaged in less serious violations).  Third, Captain Carter and plaintiff were not punished under the same standards governing discipline.  Instead, Captain Carter was punished under the DPD guidelines in effect

prior to October 1, 2008.[14]  *See Flasher Co.*, 986 F.2d at 1320.  Therefore, plaintiff fails

to demonstrate that he is similarly situated to Captain Carter.  Accordingly, because

plaintiff does not demonstrate that his demotion occurred under circumstances giving

rise to an inference of discrimination, the Court finds that he fails to establish a prima

facie case of disparate treatment based on his race.  *Khalik*, 671 F.3d at 1192.

Even assuming he can establish a prima facie case, plaintiff does not sufficiently

show pretext.  *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 n. 5 (10th Cir.

2005) (noting that some Tenth Circuit cases treat circumstances suggestive of

discrimination as an element of a prima facie case; other cases treat these

circumstances as part of the subsequent inquiry into pretext).  To show pretext, plaintiff

must produce evidence of "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for" its

demotion decision.  *See Crowe v. ADT Security Servs., Inc.*, 649 F.3d 1189, 1196 (10th

Cir. 2011).  As noted above, defendants demoted plaintiff for violating the anti-

fraternization policy, abusing his position of trust, and sending text messages to Officer

Threlkeld in an attempt to foster a personal relationship.  *See* Docket No. 18-9 at 7.

The Court finds that defendants' stated reasons for the demotion are legitimate

nondiscriminatory reasons.

Plaintiff argues that defendants' stated reasons are pretext because the bulk of

his communications with Officer Threlkeld were work related, he did not use vulgar

---

[14]Manager LaCabe also testified that he would not have found a violation of RR-105 based solely on Captain Carter's "clothes off" comment.  Docket No. 22-3 at 9 (LaCabe Dep. 138:20-139:12).

16

language, and his punishment is excessive in comparison to the discipline imposed on

Captain Carter.  Docket No. 21 at 5-6; Docket No. 18-1 at 7 (Jackson Dep. 107:22-

108:2).  None of this evidence, however, raises any genuine inconsistencies,

incoherencies, or contradictions with defendants' legitimate nondiscriminatory reasons

for demotion.  It is undisputed that plaintiff was not punished for what he said, but rather

for abusing his position of authority.  Hence, plaintiff's reliance on Captain Carter's

comments is misplaced.  In addition, the difference in degree between plaintiff's

punishment and that of Captain Carter is attributable to the implementation of new

disciplinary guidelines and Manager LaCabe's conclusion that plaintiff's conduct

warranted a "special circumstances" increase.  Moreover, plaintiff admits that he has no

evidence other than his personal beliefs that Manager LaCabe demoted him because of

his race.  Docket No. 18-1 at 7 (Jackson Dep. 105:7-17); *see Furr v. Seagate Tech.,*

*Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (noting that a plaintiff's own subjective belief is

insufficient to show pretext).  Thus, because defendants had a good faith belief that

plaintiff's conduct justified his demotion, plaintiff has not raised a genuine issue of

material fact about defendants' nondiscriminatory reasons for his demotion.  *Tesh v.*

*U.S. Postal Serv.*, 349 F.3d 1270, 1273 (10th Cir. 2003) (noting that in pretext, the

question is not whether the employer's stated reason for the plaintiff's termination was

factually accurate, but whether the employer "reasonably perceived that it was

accurate").  Thus, regardless of whether analyzed by reference to the prima facie case

or the pretext inquiry, plaintiff's "evidence of discrimination/pretext fails as a matter of

law."  *Sorbo*, 432 F.3d at 1174.

Because the Court finds that plaintiff has not sufficiently established that defendants demoted him under circumstances that give rise to an inference of discrimination, the Court need not discuss defendants' liability under *Monell* and its progeny.[15]  *See Martinez v, Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (noting that there is no municipal liability unless a plaintiff can first prove an underlying violation of his rights).  Accordingly, defendants are entitled to summary judgment on plaintiff's claim of racial discrimination since plaintiff has not raised a genuine issue of material fact to show that he was demoted because of discriminatory animus.

### B.  Retaliation

Plaintiff argues that he has not received a promotion, has been held at his current rank, and has received unfair job assignments in retaliation for filing a charge of discrimination on April 11, 2011.  Docket No. 21 at 7.[16]

A Title VII plaintiff must exhaust his or her administrative remedies for each alleged individual discriminatory act.  *Apsley v. Boeing Co.,* 691 F.3d 1184, 1210 (10th Cir. 2012); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).  "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional

---

[15]Because plaintiff does not establish a prima facie case of discrimination, the Court will not address cat's paw liability.  *See Equal Employment Opportunity Comm'n v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487 (2006) (noting that, in employment discrimination law, the "cat's paw" theory can apply when a biased subordinate who lacks decision-making authority uses the formal decision maker "as a dupe in a deliberate scheme to trigger a discriminatory employment action"); *Crowe v. ADT Security Servs.*, 649 F.3d 1189, 1194-95 (10th Cir. 2011) (noting that, under cat's paw liability, the subordinate's bias must be driven by race).

[16]Plaintiff's motion states that he filed his charge of discrimination on April 11, 2011.  Docket No. 21 at 7.  However, plaintiff's charge of discrimination notes a date of April 29, 2011.  Docket No. 18-10 at 1-2.

prerequisite to suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).  To determine whether a plaintiff has exhausted his or her administrative remedies, courts identify the scope of the allegations raised in a plaintiff's charge of discrimination because a "plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."  *Id.* at 1186; *see also Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  Courts liberally construe charges of discrimination in determining whether a plaintiff exhausted administrative remedies of a particular claim.  *Jones*, 502 F.3d at 1186.

Generally, a charge of discrimination form contains boxes for a charging party to check as the basis for his or her claim of discrimination.[17]  By checking the appropriate box, a charging party can assert a claim for discrimination based on race, retaliation, color, age, sex, disability, religion, genetic information, or national origin.  *See* Docket No. 18-10.  The failure to mark a particular box on a charge of discrimination creates a presumption that the charging party is not asserting claims represented by that box. *Jones*, 502 F.3d at 1186.  The presumption may be rebutted, however, if the text of the charge clearly sets forth the basis of the claim.  *Id.*  In this case, it is undisputed that plaintiff failed to mark the "retaliation" box in his charge of discrimination.  Docket No. 18-10.  The relevant inquiry then is whether the EEOC could reasonably have investigated a retaliation claim based on the narrative portion of plaintiff's charge of discrimination.  *Jones*, 502 F.3d at 1186-87.

---

[17]A charging party can also describe the factual allegations of his or her charge by writing in the space available underneath the boxes.  *See, e.g.,* Docket No. 18-10.

Plaintiff's charge of discrimination does contain a narrative wherein he indicates that (1) on October 17, 2009, he was suspended and demoted from the position of sergeant, which demotion was upheld on January 21, 2011 and (2) he was subject to discrimination based on his race, was not given due process, and was disciplined despite the fact that he never had a negative written assessment and performed his position satisfactorily, while white sergeants and captains did not receive similar disciplinary action.  Docket No. 18-10 at 1-2.

Construed liberally, the Court finds that the text of plaintiff's charge of discrimination does not rebut the presumption that he failed to assert a claim of retaliation.  *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 (10th Cir. 1998).  Plaintiff's charge of discrimination lacks any factual allegations regarding retaliation and fails to describe any actions or practices of defendants that could reasonably lead to an investigation of retaliation.  There are no allegations that he engaged in protected activity, that he was subject to an adverse employment action in retaliation for engaging in protected activity, or even allegations showing a causal connection leading to an inference of retaliation.  *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (identifying the factors necessary to state a prima facie case of retaliation).  Nothing in the factual basis of plaintiff's charge of discrimination placed defendants on notice that he raised a claim of retaliation.  Thus, the Court finds that an investigation into defendants' alleged retaliation against plaintiff could not have reasonably followed from plaintiff's charge of discrimination.  *Jones*, 502 F.3d at 1186. As such, plaintiff failed to exhaust his administrative remedies for his retaliation claim.

*Id.* Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claim. *Apsley*, 691 F.3d at 1211.

### C.  Failure to Promote

Plaintiff argues that he has not received a promotion since his demotion.  Docket No. 21 at 7.  A plaintiff may establish a prima facie case of a failure to promote under Title VII by showing that: (1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted or transferred despite his qualifications; and (4) the position was filled or remained open after he was rejected.[18] *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306-07 (10th Cir. 2005).  It is undisputed that plaintiff is a member of a protected class.  However, it is also undisputed that plaintiff did not apply for a promotion and is ineligible for promotion because of civil service rules.  Docket No. 18-1 at 7 (Jackson Dep. 106:20-25).  Because plaintiff is ineligible for a promotion, he does not raise any genuine dispute of material fact with regard to his failure to promote claim.  Accordingly, the Court finds that defendants are entitled to summary judgment on this claim.  *Jaramillo*, 427 F.3d at 1306-07.

### D.  Hostile Work Environment

To survive a summary judgment motion on a hostile work environment claim, a "plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to

---

[18]Although this argument is presented in the section of plaintiff's response discussing retaliation, the Court will analyze this claim separately as defendants have moved for summary judgment on this claim. *See* Docket No. 18 at 9-10.

alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004) (internal quotation marks omitted).  Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (listing factors to be considered in determining whether environment is hostile or abusive).  Plaintiff does not establish that DPD employees used a steady barrage of opprobrious racial comments that permeated the work force enough to create a racially hostile environment. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).  In fact, he does not allege any racial comments were used.  Accordingly, defendants are entitled to summary judgment on plaintiff's hostile environment claim.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 18] is **GRANTED**.  It is further

**ORDERED** that the Trial Preparation Conference scheduled for May 17, 2013 and the trial set for June 4, 2013 are **VACATED**.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed in its entirety.

DATED May 13, 2013.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge